UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | No. 2:10-CR-91 |
| | ) | |
| JONATHAN E. HUNT | ) | |
| COSTON MAJETTE, III | ) | |

## **REPORT AND RECOMMENDATION**

On August 24, 2010, defendant Coston Majette gave a statement to Special Agent Greg Smith of the Federal Bureau of Investigation. Defendant has filed a motion to suppress that statement. (Doc. 29). The motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on December 9, 2010.

Defendant acknowledges that he was given his *Miranda*[1] warning and that he signed a waiver of his right[2] to remain silent. His motion, however, asserts that the statement he made to Special Agent Smith was not voluntary. Defendant alleges in his motion that he was confronted by six law enforcement officers who had their weapons drawn; that his girlfriend's mother had died six days before, and he was scheduled to be a pallbearer on the day the officers came to his apartment; and that he had been up all the preceding night drinking beer and taking Xanax. The combination of all these factors, so he implicitly

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Ex. 1.

argues, worked to overcome his independent will to the extent that his conversation with the agents was not free and voluntary.

**LAW**

*Miranda, supra*, requires that an interrogating law enforcement officer warn a person who is in custody, or the functional equivalent of custody, of his constitutional right to remain silent and the ramifications of giving up that right.

If the individual subsequently alleges that his statement was not voluntary, the prosecution must prove by a preponderance of the evidence that, based upon the totality of the circumstances, the statement was voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Coercive government conduct is a necessary condition precedent to a finding of involuntariness. *Colorado v. Connelly*, 479 U.S. 157, 165 (1986). To establish that antecedent police conduct was coercive, the proof must demonstrate that the conduct of the police was *objectively* coercive; that it was sufficient to overbear the will of the suspect; and the suspect's independent will in fact was overcome by the coercive police conduct. *See, McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).

**FACTS**

There were only two witnesses, Special Agent Smith, and Dwayne Collins, a Morristown Police Detective assigned to the HIDTA[3] Task Force. Based upon the testimony of these two agents, the underlying facts are as follows:

---

[3]High Intensity Drug Trafficking Area.

An August 24, 2010, defendant lived in a somewhat isolated apartment complex on a dead-end road located just off the West Andrew Johnson Highway in Morristown. This area was well-known to law enforcement agencies as a high drug trafficking area. Defendant, also well-known to law enforcement authorities as a drug trafficker, lived in one of the apartments with his girlfriend, Ms. Myers.

Sometime prior to August 24, 2010, someone purchased drugs from defendant in controlled buys. Defendant was on probation from a state court conviction at the time.

At approximately 9:30 a.m. on August 24, 2010, Special Agent Smith of the FBI, accompanied by Agent Collins and four other federal and state agents, went to defendant's apartment to interview him. The six agents arrived in four vehicles, all unmarked. All the officers were in plain clothes.

All six agents walked toward the door of the apartment, but Smith was somewhat out in front. When they arrived at the door, Agent Collins stood to Smith's right near a window, and the other officers were behind and to Agent Smith's left. Agent Smith knocked on the door and announced, "Police."

At this point, Agent Smith's and Agent Collins's respective versions of what transpired differ somewhat, but that difference is minor and both factually and legally inconsequential. They do agree that no one responded to the knock at the door; rather, Ms. Myers peered out between the slats of the window blinds covering the window next to the door. Agent Smith asked her to come to the door. Agent Smith testified that it was perhaps a minute or more before someone actually came to the door, which caused him

3

(understandably) some concern. Collins, on the other hand, testified that Ms. Myers opened the door no more than ten seconds later. Smith testified that he was unaware of any agents having their guns drawn *until* the inordinate amount of time elapsed between Ms. Myers' appearance at the window and her appearance at the door. Collins, on the other hand, testified that he was never aware of any agents having their guns drawn at any time.

Regardless of how long it took Ms. Myers to open the door after peering through the window, and regardless of when and how many weapons were drawn, it is clear that weapons in fact were drawn, for a short time. It is also clear that those weapons ultimately were holstered after defendant himself came to the door, and that the ensuing conversation between Smith and defendant was cordial.

To resume the narrative, when Ms. Myers finally opened the door, Agent Smith told her that he needed to talk to defendant, and he asked her to have defendant come to the door. In less than a minute, defendant came to the door. Agent Smith identified himself, and told defendant that he wished to talk to him. Defendant agreed.

Smith asked the defendant to accompany him to Smith's car to talk, and again defendant agreed. Smith testified that had defendant declined to go to the car with him, he would have suggested another place to talk, including some place inside the apartment. It was simply Smith's intention to have a private conversation with defendant.

As stated, defendant accompanied Smith to his car, along with Collins. Neither Smith nor Collins, nor any other agent, placed their hands upon defendant; he was asked to accompany Smith to sit in the car and talk, and defendant did so willingly.

Agent Smith sat on the driver's side, defendant sat on the front passenger side, and Collins sat in the rear seat.

Defendant attempted to start the conversation, but Smith asked him to await the reading of the *Miranda* warning. Smith read the *Miranda* warning, and then provided the written acknowledgment/waiver form to defendant for his signature. Defendant read and signed the form, and it was also signed by both Smith and Collins.[4]

The interview lasted approximately twenty minutes. It was terminated by Agent Smith when he realized that some of the statements made by defendant were false based upon what Smith already knew to be true. After the interview ended, defendant went back into his apartment for a few minutes, and then came back out. At the direction of Agent Collins, a Hamblen County Deputy Sheriff came to the scene and placed defendant under arrest for the two drug transactions mentioned at the beginning of this report.

Defendant did not testify, so the court necessarily may address only the assertions in his motion, *viz.*, that he was essentially coerced into making the statement he did, as a result of which his statement was involuntary. The evidence simply does not support that contention. Both Agent Smith and Agent Collins testified that defendant was lucid, rational, and alert, and did not appear to be under the influence of any intoxicant, drug or alcohol. Although weapons were drawn for a short period of time before defendant appeared at his apartment door, those weapons were holstered and never again drawn. As noted, no one ever

---

[4]Whether defendnat was in custody or its functional equivalent is irrelevant since it is undisputed that defendant was given his *Miranda* warning before he made any statements to Smith.

placed hands upon defendant.

It also bears mentioning that defendant is no stranger to the criminal justice system. He has eight prior convictions, one of which is a drug conviction, and another involved guns. It is simply incredible to believe that he would be intimidated by Agent Smith and the other agents to the extent that his statement to Agent Smith could be described as involuntary.

**RECOMMENDATION**

The totality of the circumstances, including defendant's prior experience with the criminal justice system and his sober, rational demeanor at the time in question, indicates conclusively that his statement was knowledgeably and voluntarily made with a full understanding of his constitutional rights, and that he voluntarily and knowledgeably waived those rights.

It is therefore respectfully recommended that defendant's motion to suppress be denied.[5]

Respectfully submitted,

                                          s/ Dennis H. Inman
                                      United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).